Mary **BAGGETT**, Appellee,

v.

**PROGRAM RESOURCES,
INC.**, Appellant.

No. 86–1163.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1986.
Decided Nov. 26, 1986.

Bruce R. Lindsey, Little Rock, Ark., for appellant.

Jim Hunter Birch, Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Appellant Program Resources, Inc. (PRI) brings this appeal from the district court's [1] order awarding appellee Mary Baggett $10,710.00 in backpay upon a finding that PRI discriminated against Baggett on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* PRI contends that the district court erred (1) in holding that PRI failed to articulate a legitimate nondiscriminatory reason for not rehiring Baggett, (2) in relying on hiring decisions made in 1981 and 1982 by a decisionmaker other than the decisionmaker who made the hiring decisions regarding Baggett, and (3) in including impermissible

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

periods of time in calculating the backpay award. We affirm the judgment of the district court.

Mary Baggett, a female, was employed by the University of Arkansas on August 15, 1977, as a Diet Preparation Technician on the Diet Prep Project directed by Hugh Campbell and contracted by the National Center for Toxicological Research (NCTR). Baggett was hired and supervised by Neil Jones. On July 1, 1978, PRI took over the contract from the University of Arkansas, retaining all of the University's employees. However, on August 18, 1978, Baggett, another female and two males, were laid off pursuant to PRI's decision that a reduction in the work force was necessary. There is no documentation in Baggett's personnel file revealing any warnings or discipline for either work performance or attendance during her employment by PRI. Baggett's personnel file indicates that when she applied for unemployment benefits she was told by the Arkansas Employment Security Division that she was laid off because "work was slow and had to cut back."

After her layoff, Baggett made several inquiries with PRI regarding vacancies in the Diet Prep Project. The qualifications for a diet prep technician were that the person be over age eighteen, have a high school diploma and be willing to work under adverse working conditions. Baggett met all of these qualifications. Baggett applied for a diet prep technician position in August of 1979. That position was filled by Eddie Stephens, a twenty-one year old male with a high school diploma. He had not previously worked for PRI and had less total work experience than Baggett. Baggett also applied for a similar position in September of 1979. That position was filled by Barry Parker who was seventeen years and eleven months old when he began work with PRI. At that time he had not finished high school and was working on his high school equivalency diploma

which he expected to complete in April or May of 1980. His prior work experience consisted of being a bagger at a grocery store for several weeks before being laid off. He was the brother of a clerical worker at PRI.

Neil Jones acknowledged that Baggett's qualifications were considered when openings in the Diet Prep Project became available. He, however, stated that Baggett was not rehired because she had difficulty following instructions, was disruptive of other employees, left her work area when work was slack and complained about the lifting required in the job. The first three reasons all related to her leaving the work area when work was slow. None of these reasons was ever documented and placed in Baggett's personnel file. The evidence at trial was that Baggett did not leave the work area more often than her fellow employees.

Baggett brought this suit claiming that PRI discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and claiming intentional infliction of emotional distress.[2] The district court held that Baggett established a prima facie case of sex discrimination and that PRI failed to articulate a legitimate nondiscriminatory reason for its failure to rehire Baggett. The district court further held that even assuming that PRI had established a legitimate nondiscriminatory reason for its failure to rehire, Baggett has established that said reason was pretextual. Baggett was awarded $10,710.00 in backpay. The court dismissed her claim for intentional infliction of emotional distress.

 PRI concedes that Baggett established a prima facie case of sex discrimination under the analysis of *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It, however, argues that the district court erred in finding that PRI failed to articulate a legitimate nondiscriminatory reason for its fail-

2. Baggett instituted this proceeding as a class action. The district court, however, found that Baggett had abandoned and waived all class allegations and ordered that this matter should proceed as an individual action.

ure to rehire Baggett because it demonstrated that the reason Baggett was not rehired was due to a personality conflict. In his testimony at trial, however, Campbell stated that Baggett was not rehired because she had difficulty following instructions, was disruptive of other employees, left her work area when work was slack and complained about the lifting requirements of her job. The district court did not find these reasons to be credible given (1) that none of these reasons was documented in Baggett's personnel file, (2) the different treatment afforded Tackett, (3) the promotions of Bland and Payton, and (4) the fact that Payton was the only female supervisor in the program. In reviewing a district court's findings of fact, the court is bound by Federal Rule of Civil Procedure 52(a) and by prior case law interpreting the "clearly erroneous" standard of review. It is not the appellate court's function to decide factual issues *de novo*. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Moreover, "[c]redibility findings are uniquely within the province of the trier of fact \* \* \*". *Weber v. Block*, 784 F.2d 313, 316 (8th Cir.1986). The test is not whether review of the evidence would lead us to the same conclusion as that reached by the district court, but whether the district court has demonstrated any clear error in its conclusion. Our review of the record satisfies us that the district court's finding that PRI failed to establish a legitimate nondiscriminatory reason for its refusal to rehire Baggett is not clearly erroneous. Further, the district court was not clearly erroneous in its finding that, assuming PRI articulated a legitimate nondiscriminatory reason, said reason is pretextual.

■ PRI next contends that the district court impermissibly relied on evidence of employment decisions made by decisionmakers other than Neil Jones in finding intentional discrimination on the part of PRI. Specifically, PRI objects to reliance on testimony regarding hiring decisions made with respect to Marshall Tackett, Glen Ranken, Eula Payton and James

Bland. Marshall Tackett was a male diet prep technician who was discharged on September 2, 1981, after numerous disciplinary problems. These problems, documented in his personnel file, include tardiness, absenteeism, failure to properly perform his job, lying down on the job, failure to complete assigned tasks and failure to follow directions. In January of 1982, after Jones had left PRI but while Campbell was still Director of the Project and thus charged with the ultimate responsibility for hiring, Tackett was rehired by PRI.

In May of 1981, while Campbell was still Project Director, another male employee, Glen Ranken, with less than sixty days seniority was promoted over a female, Eula Payton, with two years experience and who had been training Ranken.

Eula Payton was promoted to foreman in January of 1982. Prior to her promotion, James Bland, who was on educational leave when Payton was promoted, stated that he would never work under a woman. Before Bland returned from his leave, Payton discussed this with her supervisor who advised her that Bland's attitude would not be a problem. One day after his return to work, Bland was promoted to assistant foreman and less than two weeks later to foreman. Campbell served as Project Manager at that time.

PRI argues that because the employment decisions affecting Baggett were made by Neil Jones, and those affecting Tackett, Ranken, Bland and Payton were made by different decisionmakers, the decisions made by those other decisionmakers are not relevant to any discrimination against Baggett. PRI relies on *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 424 (8th Cir.1970), where this court held that "[i]n examining a claim for relief under Title VII, a court's inquiry must focus upon those employment practices which give rise to a particular complaint." In *Parham*, the court refused to consider evidence of changes made in the defendant Company's employment practices two years after the alleged discrimination took place. *Parham*

is inapposite as the evidence there was that the employment practices actually changed two years later. Here, there is nothing to suggest that the practices changed at all. Campbell remained Project Manager and thus ultimately responsible for employment practices when the employment decisions regarding Tackett, Ranken, Bland and Payton were made. This being the case, the evidence of discrimination, subsequent to the discrimination against Baggett and while the unchanged employment practices were still Campbell's responsibility, is relevant to whether or not Baggett was, in fact, discriminated against by PRI. The district court did not err in relying on that evidence. *Cf. Donnell v. General Motors Corp.,* 576 F.2d 1292, 1298 n. 12 (8th Cir. 1978) (evidence of pre-Act discrimination relevant where there has been little change inthe decisionmaking process); *Williams v. Anderson,* 562 F.2d 1081, 1086 n. 7 (8th Cir.1977) (evidence of discriminatory practices and policies prior to the period of time for which relief is available under the statute of limitations is relevant where there has been little change in the decisionmaking process).

■ PRI finally contends that the district court's backpay award must be set aside as excessive. In reviewing awards of backpay, "the standard of review will be the familiar one of whether the District Court was 'clearly erroneous' in its factual findings and whether it 'abused' its traditional discretion to locate 'a just result' in light of the circumstances peculiar to the case, *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931)." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975). PRI contends that the period from approximately December 20 or 21, 1980, until March of 1981 should be excluded from the backpay award because on December 20 or 21, 1980, Baggett resigned her Arkansas employment to move to Florida to get married and she did not resume employment until March of 1981. As a general rule, a discriminatee is not entitled to backpay where he or she fails to make a good faith effort to find work.

*NLRB v. Midwest Hanger Co.,* 550 F.2d 1101, 1106 (8th Cir.1977); *NLRB v. Mastro Plastics Corp.,* 354 F.2d 170, 174 n. 3 (2d Cir.1965). However, the testimony at trial was that Baggett moved to Florida both to look for work and to get married. Nothing in the record indicates that Baggett did not make a good faith effort to look for work when she moved to Florida. Thus the district court's determination that she is entitled to backpay during this period is not clearly erroneous and the district court did not abuse its discretion in ordering backpay for the period of December 1980 through March 1981.

■ PRI also argues that backpay should not be awarded for the period following Thanksgiving of 1981 when Baggett became disabled and was unable to continue employment. The evidence presented at trial, however, is that Baggett continued to work during the month after her accident, i.e., during December of 1981. Baggett was, therefore, able to continue employment and the district court's finding that Baggett is entitled to backpay during this period is not clearly erroneous or an abuse of its discretion.

Accordingly, for the reasons set forth in the foregoing opinion, we affirm the judgment of the district court.