# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 09-6024

_____

In re:                                        *
                                              *
Brad Allen Stabler and Brenda Lee             *
Stabler,                                      *
                                              *
          Debtors.                            *
                                              *
Brad Allen Stabler and Brenda Lee             *
Stabler,                                      *
                                              *  Appeal from the United States
          Plaintiffs - Appellants,            *  Bankruptcy Court for the District of
                                              *  South Dakota
               v.                             *
                                              *
John R. Beyers,                               *
                                              *
          Defendant - Appellee.               *

_____

Submitted: October 28, 2009
Filed: November 30, 2009

_____

Before SCHERMER, MAHONEY, and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This is an appeal of the bankruptcy court's order granting the Defendant's motion to dismiss the underlying adversary proceeding.[1] The bankruptcy court dismissed the adversary proceeding based on the application of collateral estoppel to a prior state-court judgment and on a determination that permissive abstention was warranted under 28 U.S.C. § 1334(c)(1). For the reasons stated below, we affirm the bankruptcy court's decision to abstain.[2]

## I. STANDARD OF REVIEW

A bankruptcy court's decision to abstain from exercising jurisdiction is reviewed for an abuse of discretion.[3] A court abuses its discretion "when its ruling is founded on an error of law or a misapplication of law to the facts."[4] In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard.[5]

## II. BACKGROUND

The Debtors filed a Chapter 7 bankruptcy petition on May 13, 2003. In their bankruptcy schedules, the Debtors listed a debt to First State Bank of Roscoe ("FSB")

---

[1] The Honorable Charles L. Nail, Jr., United States Bankruptcy Judge for the District of South Dakota.

[2] The Panel may affirm on any basis supported by the record. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1193-94 (8th Cir. 1998). Because we affirm the bankruptcy court's decision to abstain, we do not need to review its application of collateral estoppel.

[3] *In re Pennino*, 299 B.R. 536, 538 (B.A.P. 8th Cir. 2003).

[4] *First Nat'l Bank of Olathe, Kansas v. Pontow* (*In re Pontow*), 111 F.3d 604, 609 (8th Cir. 1997).

[5] *Gourley v. Usery* (*In re Usery*), 242 B.R. 450, 457 (B.A.P. 8th Cir. 1999) (citing *Forbes v. Forbes* (*In re Forbes*), 215 B.R. 183, 187 n. 6 (B.A.P. 8th Cir. 1997)).

in the amount of $225,816.36 secured by personal property valued at $216,000. On August 12, 2003, the Debtors received a discharge.

After receiving their discharge, the Debtors entered into two transactions that eventually led to the present litigation. First, in March 2004, the Debtors and Brad Stabler's parents, Stan and Rose Marie Stabler, jointly and severally executed a note and mortgage in the amount of $650,000 in favor of FSB. The note refinanced certain pre-petition secured debt from Brad Stabler's corporation, Edmunds County Ag Services, which the Debtors had personally guaranteed, as well as some of Stan and Rose Marie Stabler's personal debt. Defendant John R. Beyers, an officer at FSB, guaranteed the note and a third party, Arnold Schurr, purchased the note. When the Debtors defaulted on the note, Arnold Schurr assigned it to Beyers.

The second transaction took place in May 2004. On this occasion, again with Beyers's assistance, the Debtors obtained a $150,000 loan from Ipswich State Bank ("ISB") which was secured by a lien on the Debtors' personal property. The Debtors used the proceeds of this loan to pay off some of their pre-petition secured debt to FSB, in order to retain the collateral securing the debt, and to pay off loans that FSB had made to the Debtors post-petition. Beyers also guaranteed this note.

In February 2005, the Debtors renewed the note to ISB and signed another security agreement. Ultimately, however, the Debtors defaulted, and ISB assigned the indebtedness and security to Beyers.

When Beyers attempted to collect these debts, the Debtors in May 2007 filed a lawsuit in the Circuit Court of McPherson County, South Dakota, against Beyers, FSB, ISB, and others. In their Complaint, the Debtors alleged, *inter alia*, that the debts they owed to FSB, ISB, and Beyers had been discharged in their bankruptcy. The Debtors amended their state-court Complaint about a year later alleging that FSB,

3

Beyers, and other individuals were guilty of fraud, breach of fiduciary duty, and conspiracy because they had led the Debtors to believe they owed discharged debt.

Beyers answered the amended complaint and filed counterclaims on the notes assigned to him. Count 1 of Beyers's counterclaim related to the note assigned to him by ISB. Count 2 sought to foreclose on the security interest securing that note. Counts 3 and 4 related to the $650,000 note originated by FSB. As to Counts 3 and 4, Beyers specifically stated that he was "requesting judgment against Brad and Brenda Stabler only for those amounts determined not to be discharged in their prior Chapter 7 bankruptcy."

The parties engaged in considerable discovery and motion practice in the state-court litigation. On October 13, 2008, the Debtors filed their reply to FSB's and Beyers's counterclaims. They again alleged that various debts were discharged and that Beyers was violating the discharge injunction by attempting to collect them.

On January 13, 2009, Beyers filed a motion for summary judgment on Counts 1 and 2 of his counterclaims. The Debtors resisted by claiming the debt related to those counts was discharged and that the ISB note and security agreement was an invalid effort to reaffirm discharged debt.

On the eve of the hearing on Beyers's motion for summary judgment in the state court, the Debtors filed an adversary complaint in the bankruptcy court alleging that Beyers's state-court counterclaims violated the discharge injunction. They asked the bankruptcy court to declare that certain debts were discharged and requested that Beyers be held in contempt.

On May 12, 2009, the state court sent a letter to the parties announcing its ruling on Beyers's motion for summary judgment. The court ruled that a bankruptcy discharge only affects a debtor's personal liability, not security interests or liens on

a debtor's property. It found that following their bankruptcy discharge, the Debtors obtained a loan from ISB and used the proceeds in part to pay off some of FSB's pre-petition liens. With the loan assigned to Beyers and in default, the court held that Beyers was entitled to summary judgment on Counts 1 and 2 of his counterclaim.

The Debtors immediately filed an Application for a Temporary Restraining Order or Preliminary Injunction in the adversary proceeding asking the bankruptcy court to enjoin Beyers from submitting an order or judgment to the state court regarding its summary judgment decision. The Debtors again alleged that the debt in Count 1 of Beyers's counterclaim had been discharged.

On April 29, 2009, the Debtors filed a motion for summary judgment on their adversary complaint, and submitted numerous exhibits in support of their motion. Beyers did not answer the Debtors' motion for summary judgment; instead, he moved to dismiss the Debtors' adversary complaint on several grounds, including the application of collateral estoppel to the state-court order granting him partial summary judgment on his counterclaims. Alternatively, Beyers requested that the bankruptcy court abstain from hearing the adversary proceeding pursuant to 28 U.S.C. §1334(c)(1).

The bankruptcy court held a hearing on Beyers's motion to dismiss on July 1, 2009. At the hearing, the bankruptcy court invited the parties, several times, to submit additional evidence and argument in support of their positions. After both parties affirmatively stated that they had nothing more to offer, the bankruptcy court announced its ruling from the bench. The Debtors timely appealed that ruling.

## III. DISCUSSION

As a preliminary matter, the Panel dispenses with the Debtors' contention that the bankruptcy court's dismissal of the adversary proceeding should be reversed because the bankruptcy court considered matters outside the pleadings in its decision.

According to the Debtors, the bankruptcy court should have treated the Defendant's motion to dismiss as a motion for summary judgment, as required by Fed. R. Civ. P. 12(d),[6] and should have given the Debtors an opportunity to respond to the Defendant's motion. This argument is without merit for two reasons.

First, the record belies the Debtors' contention that they were surprised by the bankruptcy court's consideration of matters outside the pleadings or that they were not given an adequate opportunity to respond to the Defendant's motion. Most of the matters outside the pleadings considered by the court were actually "joint" exhibits submitted by agreement between the Defendant and the Debtors. And the bankruptcy court gave the Debtors no less than three opportunities, including two short recesses, to offer additional evidence or argument in opposition to the Defendant's motion. Upon reconvening after the first recess, the Debtors accepted the bankruptcy court's invitation and offered three additional exhibits. After that, however, the Debtors affirmatively stated that they had nothing further to offer. At no point did the Debtors object to the Court's consideration of the exhibits or any other matters outside the pleadings.

The fact that the bankruptcy court never formally announced that it was treating the Defendant's motion to dismiss as a motion for summary judgment is immaterial; all that matters is that the non-moving party has an adequate opportunity to respond.[7]

---

[6] Applicable to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7012(b).

[7] *See Blair v. Wills*, 420 F.3d 823, 826 (8th Cir. 2005) (holding that the district court's consideration of matters outside of pleadings on a motion to dismiss was harmless where the non-movant had an adequate opportunity to respond). *See also Angel v. Williams*, 12 F.3d 786, 788 (8th Cir. 1993) (noting that Rule 12(b) does not require the court to give affirmative notice to the parties of its intent to consider matters outside the complaint; constructive notice is sufficient when plaintiff has adequate time to respond).

And the record indicates that the Debtors had an adequate, if not ample, opportunity to respond to the Defendant's motion to dismiss.

Second, any error the bankruptcy court might have committed in failing to formally announce its intention to treat the Defendant's motion to dismiss as a motion for summary judgment is also harmless because the court could have reached the issue of abstention *sua sponte*.[8] Hence, the procedure by which the issue came before the bankruptcy court is largely irrelevant, as long as the Debtors had notice that the court was considering abstention. And they did. They had from the time the Defendant filed his motion to dismiss raising the abstention issue – May 21, 2009 – to the date of the hearing – July 1, 2009.

Therefore, the Panel finds that the Debtors' objection to the procedure by which the bankruptcy court took up and ruled on the Defendant's motion to dismiss was proper and does not warrant a reversal of the bankruptcy court's order dismissing the adversary proceeding.

## A.    Permissive Abstention under 28 U.S.C. § 1334(c)(1).

A bankruptcy court's authority to abstain from exercising its jurisdiction over a proceeding arises under 28 U.S.C. § 1334(c)(1), which provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State

---

[8] *See Bellotti v. Baird*, 428 U.S. 132, 143, 96 S.Ct. 2857, 2864, 49 L.Ed.2d 844 (1976) (federal court may consider abstention *sua sponte*). *See also Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir. 1992) (bankruptcy court may consider permissive abstention under § 1334(c)(1) *sua sponte*); *In re Wayne Engineering Corp.*, 2008 WL 2356673 (Bankr. N.D. Iowa, June 5, 2008) (same).

law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.[9]

Because the statute speaks in general concepts, *i.e.*, the "interest of justice" and "interest of comity," courts have developed specific criteria to determine whether abstention is warranted. These criteria include:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,

(2) the extent to which state law issues predominate over bankruptcy issues,

(3) the difficult or unsettled nature of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than the form of an asserted "core" proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden on the bankruptcy court's docket,

(10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties,

---

[9] 28 U.S.C. § 1334(c)(1).

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.[10]

The bankruptcy court determined that the majority of these factors weighed in favor of abstention. The Panel finds no fault with the bankruptcy court's analysis or its conclusion that factors 1, 4, 8, 10, 11, and 12 weigh in favor of abstention and that the remaining factors either are neutral or weigh slightly against abstention.

Of the factors weighing in favor of abstention, the tenth factor – the likelihood one of the parties is forum shopping – deserves particular note because of how apparent and egregious it is that the Debtors were forum shopping. As the bankruptcy court aptly emphasized: "They (the Debtors) filed their action in state court. They raised the issue of their discharge in their state court [sic] complaint. They allowed their action to proceed in state court for some 19 months. And they waited to commence this adversary proceeding until the state court ruled against them on one matter and appeared poised to rule against them on another."[11] To permit the Debtors to proceed with their adversary complaint in the bankruptcy court would "condone their blatant attempt to circumvent the decision of the state court in which they chose to proceed more than two years ago and secure a different or better result in this (the bankruptcy) court."[12]

---

[10] *In re Williams*, 256 B.R. 885, 893-94 (B.A.P. 8th Cir. 2001). *See also Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) ("Courts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative.").

[11] Transcript, p. 21.

[12] *Id.*

The Debtors dispute that they are forum shopping, arguing that the state court did not have jurisdiction to render a decision on the dischargeability of the debts owed to Beyers and that "the discharge order and discharge injunction were not clearly implicated until January 2009, when Defendant refused to answer an interrogatory requesting he describe the debt that was non discharged in [the Debtors'] bankruptcy." Neither argument has merit.

The Debtors' first contention, that the state court cannot determine whether a debt has been discharged in bankruptcy, is legally flawed and contrary to the Debtors' own conduct. Aside from determinations of dischargeability under 11 U.S.C. § 523(a)(2), (4), or (6), state courts have concurrent jurisdiction to determine the dischargeability of a debt.[13] Here, the issue before the state court (and bankruptcy court) was not whether the Debtors' debts to Beyers were excepted from discharge under § 523(a)(2), (4), or (6), but whether they constituted post-petition debts outside the penumbra of the discharge and discharge injunction. Under § 727(b) and *Everly*, the state court had jurisdiction to make that determination.[14] Moreover, the Debtors apparently believed that the state court had jurisdiction to determine the dischargeability of debts when they chose that forum to bring their first suit.

The Debtors' second argument that the discharge order and injunction were only recently put at issue is also belied by the facts. The Debtors placed their discharge, and by implication, the discharge injunction, squarely at issue in the amended complaint they filed in state court on June 17, 2008. In their recitation of (presumably) relevant facts, the Debtors recounted that they were granted a discharge of their debts on August 12, 2003, that FSB was named as a creditor in their bankruptcy proceeding, that their guarantee of the Edmunds County Ag Services debt

---

[13] 11 U.S.C. § 727(b). *See In re Everly*, 346 B.R. 791, 796 (B.A.P. 8th Cir. 2006).

[14] *Id.*

10

was discharged, that Beyers and FSB attempted to obtain the reaffirmation of a discharged debt, and that Arnold Schurr, ISB, and Beyers tried to "[l]aunder the debt through a series of transactions so as to give it the appearance of a debt actually owed (*i.e.*, a debt that had not been discharged)." Then, in Count III, which seeks damages against Beyers and FSB for fraud, the Debtors alleged that "Beyers and FSB knew that the . . . debt[s] . . . were not in fact owing," and that "[a]s part of this fraudulent scheme, Beyers and FSB misled [the Debtors] into believing that they had reaffirmed and continued to owe the pre-bankruptcy debt." The presence of these allegations in the Debtors' amended complaint leaves no doubt that the Debtors' discharge and the discharge injunction were at issue in the state court litigation. Moreover, it was the Debtors who put them at issue. And there is little doubt that they would have accepted a favorable ruling from the state court on these issues had one been issued.

## IV. CONCLUSION

For the reasons stated above, the bankruptcy court's order abstaining from exercising jurisdiction over the adversary proceeding is affirmed.

---